The Brost Pattern & Casting Co. v. Commissioner.
Brost Pattern & Casting Co. v. Commissioner
Docket No. 7486.
United States Tax Court
1946 Tax Ct. Memo LEXIS 104; 5 T.C.M. (CCH) 715; T.C.M. (RIA) 46194; August 14, 1946
*104 J. Virgil Cory, Esq., 1208 Terminal Tower Bldg., Cleveland 13, Ohio, for the petitioner. C. E. Price, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax for 1940 and 1941 in the amounts of $869.16 and $2,732, respectively; in its declared value excess profits tax for 1940 and 1941 in the respective amounts of $621.22 and $1,064.35; and in its excess profits tax for the years 1940, 1941 and 1942 in the respective amounts of $744.40, $6,580.08 and $21,608.20. The issues presented are whether respondent erred in denying a claimed deduction in 1940 in the amount of $6,016.31, as payment for inventory materials, and whether respondent erred in disallowing as a deduction in 1941 the sum of $19,768.18 paid two officers, and in 1942 the sum of $24,500 paid two officers, as excessive compensation. Findings of Fact Petitioner is a corporation organized in 1936, with its principal place of business in Cleveland, Ohio. It filed its income, declared value excess profits tax and excess profits tax returns for the taxable years 1940, 1941 and 1942 with the collector of internal revenue *105 for the 18th district of Ohio. The business now conducted by petitioner was, prior to the organization of petitioner, conducted as a partnership for more than 30 years by three brothers of the Brost family. Upon the incorporation of petitioner corporation, the partnership transferred its assets to petitioner, and its stock was issued to the partners in proportion to the interests held by each brother in the partnership, with the result that J. V. Brost held 80 shares, Oliver Brost held 40 shares, and A. I. Brost held 5 shares of the total of 125 shares of petitioner's stock outstanding of a par value of $200 per share. Oliver Brost died in 1936 and his 40 shares were purchased by Mrs. J. V. Brost, who owned them during the tax years. The business consisted of a pattern shop and non-ferrous metal foundry. At the time petitioner took over the business of the partnership, it took over the inventory at book figures, and no physical inventory was then made. As the articles or material making up the inventory were taken from the various stock rooms they were "costed out" by which we understand that the cost of the articles or material so withdrawn was subtracted from the inventory account. *106 Late in 1939 the total amount of inventory on the books fell to about $800. It was apparent that the stock of metals acquired from the partnership and still on hand was substantially greater than the books reflected, and a physical inventory was thereupon taken. It was found to amount to $6,016.31 more than the books had reflected. A charge in that amount was made to inventory on the books, and a credit was made to notes payable. A promissory note for $6,000 was executed by petitioner to J. V. Brost, who included it in his taxable income for 1940 and paid tax thereon pursuant to a holding by an internal revenue agent that this amount constituted additional compensation paid to him. The note was paid in 1942. Petitioner paid J. V. Brost, its president and owner of 64 percent of its stock, $23,884.09 as compensation for his services in 1941, and $25,500 in 1942. Respondent disallowed the deduction of $11,384.09 thereof for 1941 and $13,000 for 1942, allowing the deduction of $12,500 for each of such years as reasonable compensation payable to J. V. Brost. Petitioner paid to Albert Brost, its secretary-treasurer and owner of 4% of its stock, $16,384.09 as compensation in 1941, and *107 $19,500 in 1942. Respondent disallowed the deduction of $8,384.09 in 1941 and $11,500 in 1942, allowing the deduction of $8,000 for each of such years as reasonable compensation payable by petitioner to Albert Brost. J. V. Brost began working in pattern shops when he was 15 years old. In 1910 he started his own business. Two or three years later, his brother Albert came to work for him, having worked elsewhere in a foundry and pattern shop to gain experience. In 1915 or 1916, another brother, Oliver, came into the business as a partner with J. V. Brost. Oliver had also been a foundryman, and, in addition, had studied bookkeeping and purchasing. The partnership continued until 1936, when petitioner was formed, at which time the interests of J. V., Oliver, and Albert in the partnership were 64, 32 and 4 percent, respectively. During these years, Oliver ran the foundry, and Albert the pattern shop. J. V. Brost was the executive head of the business. During the tax years 1941 and 1942, J. V. Brost was president of petitioner corporation maintaining contact with customers and prospective customers, handling sales, managing the business, participating in estimating and policy-making, *108 advertising, engineering and experimental work. He served as advisory member of the American Foundrymen's Association, and was one of the organizers and charter members of the National Association of Pattern Manufacturers, in which organization he has held the offices of president and vice-president and member of the board. He was frequently called upon to advise others in the field. During the tax years, he worked from 8 to 12 hours a day, or longer, and regularly worked Sundays and holidays. He frequently worked at home, in a room set aside for that use, until the early hours of the morning. He devoted his full time to petitioner's business. Albert Brost, who was petitioner's secretary-treasurer, owned 4 percent of its stock. He had had about 28 years of experience in the business, having been associated with it since 1913. He managed the pattern shop during the years prior to 1936, and after Oliver's death in 1936, he assumed the responsibilities theretofore carried by him. During the tax years, he was superintendent of the whole plant operated by petitioner, both pattern shop and foundry, and did purchasing, estimating, engineering and experimental work. He handled employment *109 and personnel matters. During the period 1936-1942 the foundry business increased more than 100 percent over its previous capacity, and during the taxable years Albert Brost worked from 8 to 18 hours a day, including Sundays and holidays. He devoted his full time to the business. Both men possessed a high degree of technical knowledge and skill, born of long experience in their field. Petitioner's net sales, net income, dividends paid, compensation of the officers in question, and surpluses at the end of each of the years 1936, when petitioner was incorporated, through 1942, are set out in the following tabulation: Calendar
Rate of
Dividends
year
dividend
Net sales
Net income
paid
1936
5%   $ 113,425.72
$ 1,598.11
$ 1,250.00
1937
6    133,904.68
1,860.52
1,500.00
1938
67,969.37
- 2,844.66
1939
7 1/2
113,071.12
4,619.14
1,875.00
1940
7 1/2
127,830.16
6,634.76
1,875.00
1941
7 1/2
218,727.72
7,290.54
1,875.00
1942
7 1/2
247,163.52
14,874.02
1,875.00
Totals
$1,022,092.29
$34,032.43
$10,250.00
Compensation
Surpluses
Calendar
of officers
at end
year
J. V. Brost
A. I. Brost
of year
1936
$ 14,008.18
$ 4,838.18
$ 79.84
1937 15,030.90 5,615.90 276.70
1938 4,427.73 4,427.73 2,567.96
1939 9,945.00 4,445.00 408.36
1940 10,950.91 4,950.91 3,304.19
1941 23,884.09 16,384.09 7,142.91
1942 25,500.00 19,500.00 12.336.54
Totals
$103,746.81
$60,161.81
*110 Petitioner's sales in 1941, the first of the two years for which salary payments are challenged, increased 96.63 percent over the average for the five preceding years, and the 1942 sales increased 122.19 percent over the average of such years. Its net worth increased approximately 50 percent after payment of salaries and dividends over the same period. The salaries paid the two officers were comparable to salaries paid in similar businesses of comparable size in the Cleveland area, and were not unreasonable or excessive in amount. Opinion KERN, Judge: The first of the two questions presented in this proceeding arises out of the respondent's action in disallowing an item of $6,016.31, included in the aggregate of $32,895.68, which was designated in petitioner's 1940 tax returns as "the cost of material or merchandise bought for manufacture or sale." The evidence shows that at the time of petitioner's organization to succeed to the partnership business, no physical inventory of metals on hand was taken, but the book figure was accepted as accurate by both parties. Later, in 1939 or early in 1940, the inventory figure on petitioner's books fell to a low figure of approximately *111 $800, at which time it became obvious that there was a discrepancy between the book figure and the amount of metal on hand. A physical inventory was then undertaken, and in April of 1940 it was determined that there had been on hand at the time of petitioner's organization approximately $6,000 worth of metal in excess of the amount indicated on the partnership books. An item was credited to inventory on petitioner's books to conform to the inventory physically present and theretofore unreflected, and a note was given to J. B. Brost representing the value of that metal. Respondent included the amount so paid to J. V. Brost in his individual income taxable in 1940 as additional compensation. Petitioner now strongly urges that it correctly handled the item by including it in its inventory account as materials purchased for manufacturing, thus reflecting the transaction in its taxable income for that year to whatever extent the material was used during that year. It contends, alternatively, however, that if its treatment should be held to be incorrect, then it should be allowed a deduction on the theory that it was additional compensation, on which theory it was taxed to the recipient. *112 We are persuaded by the evidence that the payment was made, and that it was intended to be made for the purpose of adjusting a discrepancy in the inventory account. However, we are unable to say, from the evidence, that petitioner was under any obligation to make the payment. The terms of the contract under which petitioner acquired the partnership assets are not in the record. It is therefore impossible to say that these assets of the partnership were not included with all the others in the transfer, for which the former owners were fully compensated by the issuance of petitioner's capital stock. If it were shown that they were clearly not included among the partnership assets for which petitioner issued its capital stock, then there would presumably be some obligation to pay the owners of the property, the partners or their respective heirs or assigns. In such a case, however, payment of the entire amount to one such partner would obviously not discharge the obligation to the others. As we have said, however, petitioner has not shown the existence of any obligation on its part to make the payment at all. We have held that payments voluntarily made by a corporation which it *113 was under no legal obligation to make are not deductible as ordinary and necessary business expenses. L. Schepp Co., 25 B.T.A. 419; S. C. Toof & Co., 21 B.T.A. 916. We think this theory is peculiarly applicable and properly invoked in this case of payments by a close corporation to its principal stockholder and president. There is, further, absolutely no evidence in the record that the payment here was compensation for personal services. Petitioner denies that such was the case, though confessing its willingness to accept the deduction on that theory. Although the payment was taxed to J. V. Brost individually on the theory that it was compensation, respondent points out that there is no evidence here upon which we could sustain this deduction on that ground. The mere fact that the recipient paid a tax on the amount in question is not of itself conclusive of its deductibility by the payor. We are of the opinion that petitioner has not sufficiently established this item to have been properly deductible as an ordinary and necessary expense. With respect to the salary issues, which relate to the tax years 1941 and 1942, the facts which are pertinent *114 to a consideration of the reasonableness of salaries paid to officers of the corporation have been set out in our findings. From them, it is apparent that the two officers involved here were men of long experience and outstanding technical skill and knowledge, engaged in a highly specialized field of work. They worked long and conscientiously in petitioner's business, devoting their full time to it. The payments of compensation for services bore no relation to their stockholdings, and were comparable to the salaries of other men doing fairly comparable work. The corporate earnings increased substantially during the tax years, and dividends of 7 1/2 percent were paid in each year to stockholders. Petitioner's success was due in no small measure to the qualifications of these two officers who were in active charge of all phases of its activity. While we have set forth in our findings figures which show, among other things, a considerable increase in petitioner's sales during the period 1940-1942, it is obvious that the increase during this period (1940-1942) was primarily due to the national defense and war efforts and not to any promotional efforts of petitioner's officers and employees. *115 However, it is equally obvious from the record herein, that these increased sales resulted in a considerable increase in petitioner's entire operations, and, consequently, in a considerable increase in the duties and responsibilities of the two officers whose salaries are here involved. We conclude that the amounts paid them as compensation for their personal services were reasonable, and that respondent erred in disallowing any part of them. Decision will be entered under Rule 50.